**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| EDDIE ACEVEDO, | : | |
| | : | Civil Action |
| Plaintiff, | : | 10-5103 (JBS) |
| | : | |
| v. | : | **O P I N I O N** |
| | : | |
| CFG HEALTH SYSTEM STAFF, et al., | : | |
| | : | |
| Defendants. | : | |

**Simandle**, District Judge:

 Plaintiff Eddie Acevedo, a pretrial detainee confined at the Atlantic County Justice Facility, Mays Landing, New Jersey, seeks to bring this action in forma pauperis, pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), the Court will grant Plaintiff's application to proceed in forma pauperis, pursuant to 28 U.S.C. § 1915(a), and will order the Clerk to file the Complaint.[1]

---

[1] Plaintiff's pleadings were written on an outdated civil complaint form (stating that the filing fee for a civil suit is $120). See Docket Entry No. 1, at 2. Currently, the filing fee associated with initiation of a civil matter is $350. (The civil filing fee increased from $120 to $150 effective November 1, 1997; then increased from $150 to $250, effective March 7, 2005; and finally increased from $ 250 to $ 350, effective April 9, 2006.) Plaintiff's willingness to assume the financial responsibility associated with initiation of this matter under the *currently* existing law automatically ensues from the very

At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief, pursuant to 28 U.S.C. § 1915(e)(2).

I. **BACKGROUND**

Plaintiff asserts two lines of claims seemingly having no connection to one another.

First, naming unspecified "CFG Health System Staff and Medical Department" as one set of Defendants in this action, Plaintiff alleges that: (a) when he injured his finger on July 29, 2010, he was taken to the Medical Department and had an x-ray performed on his finger; (b) the x-ray showed no injury; and (c) no surgery was performed even though Plaintiff uttered his opinion that his finger must have been dislocated and required an immediate operation. See Docket Entry No. 1, at 4. Now, Plaintiff alleges that he was "deni[ed] the proper medical attention" and seeks injunctive relief (in the form of this Court's order directing surgery on Plaintiff's finger) and monetary damages. See id. at 4-5, 8.

---

fact of Plaintiff's initiation of this matter. See 28 U.S.C. § 1915(b)(1); see also Hairston v. Gronolsky, 2009 U.S. App. LEXIS 22770 (3d Cir. Oct. 15, 2009) (clarifying that, regardless of the litigant's willingness or unwillingness to be assessed the filing fee, the litigant's "legal obligation to pay the filing fee [is] incurred by the initiation of the action itself") (citing Hall v. Stone, 170 F.3d 706, 707 (7th Cir. 1999)).

With regard to his other line of claims, Plaintiff named his warden and two correctional officers (Sergeant Kelly and Lieutenant Hendricks) as Defendants, asserting that: (a) on July 30, 2010, Plaintiff was transferred into segregated confinement upon his own request (because Plaintiff was in "fear [of] be[ing] assaulted by [some unspecified] Muslims"); but (b) the segregated confinement quarters where Plaintiff was transferred were not to his liking because there were "no white Caucasian American detainees [housed there,] and barely [any] Spanish detainees." Id. at 6. Plaintiff, therefore, asserts that he should have been transferred to another area in the Atlantic County Justice Facility, where certain pre-trial detainees were housed together with convicted inmates segregated as a result of committing disciplinary infractions (and where, the Court presumes, the racial and ethnic composition of inmates was more to Plaintiff's liking). See id. Maintaining that Defendants' failure to house him in accordance with his racial//ethnic preferences violated his rights, Plaintiff seeks monetary damages for emotional and mental angst that he allegedly suffered, as well as for the allegedly developed pain he is experiencing during his bowel movement. See id. at 7-8.

## II. STANDARD OF REVIEW

In determining the sufficiency of a complaint, the Court must be mindful to construe the facts stated in the complaint liberally in favor of the plaintiff. See Erickson v. Pardus, 551

3

U.S. 89 (2007); <u>Haines v. Kerner</u>, 404 U.S. 519 (1972); <u>United States v. Day</u>, 969 F.2d 39, 42 (3d Cir. 1992). Indeed, it is long established that a court should "accept as true all of the [factual] allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997). However, while a court will accept well-pled allegations as true, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. <u>See</u> <u>id.</u>

Addressing the clarifications as to the litigant's pleading requirement stated in the United States Supreme Court in <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007), the Court of Appeals for the Third Circuit provided the courts in this Circuit with detailed and careful guidance as to what kind of allegations qualify as pleadings sufficient to pass muster under the Rule 8 standard. <u>See</u> <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 230-34 (3d Cir. 2008). Specifically, the Court of Appeals observed as follows:

> "While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation [is] to provide the 'grounds' of his 'entitle[ment] to relief' [by stating] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." <u>Twombly</u>, 127 S. Ct. at 1964-65 . . . Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." <u>Id.</u> at 1965

4

> n.3. . . . "[T]he threshold requirement of Rule 8(a)(2) [is] that the 'plain statement [must] possess enough heft to 'sho[w] that the pleader is entitled to relief.'" Id. at 1966. [Hence] "factual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965 & n.3. . . . [Indeed, it is not] sufficient to allege mere elements of a cause of action; instead "a complaint must allege facts suggestive of the proscribed conduct." Id.
>
> Id. at 230-34 (original brackets removed).

This pleading standard was further refined by the United States Supreme Court in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), where the Court observed:

> [In any civil action, t]he pleading standard . . . demands more than an unadorned ["]the-defendant-unlawfully-harmed-me["] accusation. [Twombly, 550 U.S.] at 555 . . . . A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." [Id.] at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Id. at 557. . . . A claim has facial plausibility [only] when the plaintiff pleads factual content . . . . Id. at 556. [Moreover,] the plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully. Id. [Indeed, even w]here a complaint pleads facts that are "merely consistent with" a defendant's liability, [the so-alleging complaint still] "stops short of [showing] plausibility of 'entitlement to relief.'" Id. at 557 (brackets omitted). [A fortiori,] the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions [or to t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements [,i.e., by] legal conclusion[s] couched as a factual allegation [e.g.,] the plaintiffs' assertion of an unlawful agreement [or] that [defendants] adopted a policy "'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." . . . . [W]e do not reject these bald allegations on the ground that they are unrealistic or nonsensical. . . . It is the

5

> conclusory nature of [these] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth. . . . [Finally,] the question [of sufficiency of] pleadings does not turn . . . the discovery process. Twombly, 550 U.S.] at 559 . . . . [The plaintiff] is not entitled to discovery [where the complaint alleges any of the elements] "generally," [i.e., as] a conclusory allegation [since] Rule 8 does not [allow] pleading the bare elements of [the] cause of action [and] affix[ing] the label "general allegation" [in hope to develop facts through discovery].

Iqbal, 129 S. Ct. at 1949-54.

### III. **SECTION 1983 ACTIONS**

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

6

## IV. **DISCUSSION**

As a pretrial detainee, Plaintiff is protected by the Due Process Clause of the Fourteenth Amendment. See Reynolds v. Wagner, 128 F.3d 166, 173 (3d Cir. 1997) (the Due Process Clause provides protections for pre-trial detainees similar to those protections afforded to sentenced prisoners); see also Bell v. Wolfish, 441 U.S. 520, 544 (1979). The Eighth Amendment sets forth the minimum standard by which claims of pretrial detainees rights should be evaluated.[2] See Bell, 441 U.S. at 544 ("pretrial detainees, who have not been convicted of any crimes, retain at least those constitutional rights that we have held are enjoyed by convicted prisoners"); see also City of Revere v. Massachusetts

---

[2] The State's incarceration of pretrial detainees (and convicted individuals) comports with due process guarantees because of the State's recognized interests in detaining defendants for trial (and in punishing those who have been adjudged guilty of a crime). The State's exercise of its power to hold detainees and prisoners, however, brings with it a responsibility under the Constitution to tend to essentials of their well-being: "[W]hen the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs -- e.g., food, clothing, shelter, medical care, and reasonable safety . . . . The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200 (1989) (citations omitted). Hence, since pretrial detainees and convicted state prisoners are similarly restricted in their ability to fend for themselves, the State owes a duty to both groups that effectively confers upon them a set of constitutional rights that fall under the Court's rubric of "basic human needs."

Gen. Hosp., 463 U.S. 239, 244 (1983) (a pretrial detainee's due process rights are said to be "at least as great as the Eighth Amendment protections available to a convicted prisoner").

The Eighth Amendment, applicable to the individual states through the Fourteenth Amendment, prohibits the states from inflicting "cruel and unusual punishments" on those convicted of crimes. See Rhodes v. Chapman, 452 U.S. 337, 344-46 (1981). Under the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, including adequate food, clothing, shelter, medical care, and personal safety. See Farmer v. Brennan, 511 U.S. 825, 832 (1994).

To successfully state a claim for violation of the Eighth Amendment, an inmate must satisfy both the objective and subjective components of such a claim. The inmate must allege a deprivation which was "sufficiently serious," and that in their actions or omissions, prison officials exhibited "deliberate indifference" to the inmate's health or safety. See Farmer, 511 U.S. at 834; Nami v. Fauver, 82 F.3d 63, 67 (3d Cir. 1996). Claims of pretrial detainees are assessed analogously. See Nicini v. Morra, 212 F.3d 798, 811 n.10 (3d Cir. 2000) (citing Qian v. Kautz, 168 F.3d 949, 955-56 (7th Cir. 1999), for proposition that a "detainee's due process claims judged by Farmer standard"). In contrast, "the protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison

8

officials." Davidson v. Cannon, 474 U.S. 344, 348 (1986); see also Whitley v. Albers, 475 U.S. 312 (1986) (where an inmate filed suit against prison officials alleging that they violated his rights under the Eighth and Fourteenth Amendments by shooting him during the course of their attempt to quell a prison riot, the Court held that the shooting was part and parcel of a good-faith effort to restore prison security and did not violate the inmate's constitutional rights); accord Daniels v. Williams, 474 U.S. 327, 332 (1986); Salazar v. City of Chicago, 940 F.2d 233, 238 (7th Cir. 1991) ("The distinction between negligence and gross negligence does not respond to the due process clause's function, which is to control abuses of government power. A 'gross' error is still only an error, and an error is not an abuse of power. Since an error by a government official is not unconstitutional, 'it follows that "gross negligence" is not a sufficient basis for liability'") (quoting Archie v. City of Racine, 847 F.2d 1211, 1220 (7th Cir. 1988) (en banc)). In other words, an allegation of medical negligence does not rise to the level of a constitutional violation.

Therefore, screening allegations of pretrial detainees, the court must examine these allegations under the standard set forth in Bell v. Wolfish, 441 U.S. at 535, i.e., whether the conditions of confinement amounted to punishment prior to an adjudication of

guilt,[3] assessing these conditions in their entirety. See Hubbard v. Taylor, 399 F.3d 150, 159, 166 (3d Cir. 2005) ("In assessing whether the conditions are reasonably related to the assigned purposes, [a court] must further inquire as to whether these conditions cause [inmates] to endure [such] genuine privations and hardship over an extended period of time[: since, if so,] the adverse conditions [might] become excessive in relation to the purposes assigned to them") (quoting Union County Jail Inmates v. DiBuono, 713 F.2d 984, 992 (3d Cir. 1983)); accord Wilson v. Seiter, 501 U.S. 294, 298 (1991) (same as under the Eighth Amendment, the objective component of the Fourteenth Amendment inquiry looks into whether "the deprivation [was] sufficiently serious," while the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind").

### A.  **Medical Care Claim**s

To prevail on a medical care claim under the Eighth Amendment, an inmate must show that the defendants were deliberately

---

[3]

> [I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal -if it is arbitrary or purposeless - a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees.

Bell, 441 U.S. at 539 (footnote and citation omitted).

indifferent to his serious medical needs.  See Estelle v. Gamble, 429 U.S. 97; Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). Persistent severe pain qualifies as a serious medical need.  A medical need is serious where it "has been diagnosed by a physician as requiring treatment or is . . . so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

"Deliberate indifference" exists "where [a] prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." Rouse, 182 F.3d at 197.  Furthermore, deliberately delaying necessary medical diagnosis for a long period of time in order to avoid providing care constitutes deliberate indifference that is actionable. See Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993). Deliberate indifference is also evident where officials erect arbitrary and burdensome procedures that result in interminable delays and denials of medical care to suffering inmates.  See Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 346-47 (3d Cir. 1987), cert. denied 486 U.S. 1006 (1998). However, neither inconsistencies or differences in medical diagnoses, nor refusal to consider inmate's self-diagnoses, to

11

summon the medical specialist of the inmate's choice, to perform tests or procedures that the inmate desires, to explain to the inmate the reason for medical action or inaction, or to train the inmate to perform medical procedures can amount to cruel and unusual punishment. See White v. Napoleon, 897 F.2d 103 (3d Cir. 1990) (mere disagreements over medical judgment do not state a claim).

Here, Plaintiff's allegations are void of any facts indicating that he was subjected to conditions of confinement that amounted to punishment prior to an adjudication of guilt through the means of denial of medical care: indeed, Plaintiff concedes that – upon injuring his finger – he was swiftly examined by medical practitioners, and an x-ray of his finger was taken and evaluated, showing no injury. See Docket Entry No. 1, at 4-5. All Plaintiff is alleging is his disagreement with the diagnosis reached by the medical professionals, i.e., while they concluded that Plaintiff's finger did not require any surgery, he maintains that his finger was dislocated and such dislocation should be surgically corrected. However, Plaintiff's disagreement with the diagnosis rendered (even if the Court were to assume that Plaintiff is correct in his self-diagnosing) does not state a claim of constitutional magnitude. Cf. White v. Napoleon, 897 F.2d 103 (mere disagreements over medical judgment do not state Eighth Amendment claims); see also Patterson v. Lilley, 2003 U.S. Dist. LEXIS 11097 (S.D.N.Y. June 20,

2003) (defendants could only be held deliberately indifferent to an existing serious medical condition, not a speculative future medical injury); Jones v. Lockhart, 484 F.2d 1192 (8th Cir. 1973) (allegations of mere differences of opinion over matters of medical judgment fail to state a federal constitutional question); Hyde v. McGinnis, 429 F.2d 864 (2d Cir. 1970) (a difference of opinion between physician and patient did not sustain a claim under § 1983; the conduct must be so harmful that it should be characterized as a barbarous act that shocked the conscience); Church v. Hegstrom, 416 F.2d 449 (2d Cir. 1969) (mere negligence does not suffice to support a § 1983 action); Goff v. Bechtold, 632 F. Supp. 697 (S.D. W. Va. 1986) (denial of preferred course of treatment does not infringe constitutional rights).

Therefore, Plaintiff's allegation of denial of "proper" medical care will be dismissed, since his facts depict, at most, a case of medical malpractice rather than of punishment administered prior to an adjudication of guilt. Moreover, since the Complaint unambiguously indicates that Plaintiff's finger was promptly examined and surgery was denied as a result of medical judgment (rather than an undue delay or deliberate ignorance of Plaintiff's injury), it appears futile to grant Plaintiff leave to amend this line of claims. Consequently, these claims will be dismissed with prejudice.

**B.     Plaintiff's Choice of SHU**

As noted <u>supra</u>, in addition to his above-discussed claims asserting denial of proper medical care, Plaintiff also alleges that his rights were violated when, upon his request, his prison officials transferred him to an SHU, but the racial/ethnic composition of the SHU population turned out not to be to Plaintiff's liking.

Plaintiff's assertion of this line of claims in the Complaint setting forth Plaintiff's medical care claims violates the requirements of Rules 18 and 20.  Rule 20(a)(2) of the Federal Rules of Civil Procedure limits the joinder of defendants, and Rule 18(a), governs the joinder of claims.  <u>See</u> Fed. R. Civ. P. 18(a), 20(a)(2). Rule 20(a)(2) provides: "Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2)(A) and (B).  Rule 18 (a) provides : "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a).  Wright & Miller's treatise on federal civil procedure explains that, where multiple defendants are named, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18 . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all . . .

Charles Allen Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice & Procedure Civil 3d §1655; see also United States v. Mississippi, 380 U.S. 128, 143 (1965) (where county registrars were alleged to be carrying on activities which were part of a series of transactions or occurrences the validity of which depended upon questions of law or fact common to all of them, joinder of registrars in one suit as defendants was proper under Rule 20(a)); Ross v. Meagan, 638 F. 2d 646, 650 n.5 (3d Cir. 1981), overruled on other grounds by, Neitzke v. Williams, 490 U.S. 319, 328 (1989) (joinder of defendants is not permitted by Rule 20 unless both commonality and same transaction requirements are satisfied). Consequently, a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact. See Fed. R. Civ. P. 20(a)(2). As one court explained, a prisoner may not join in one case all defendants

against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produced but also to ensure that prisoners pay the required filing fees - for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . .
>
> A buckshot complaint that would be rejected if filed by a free person - say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions - should be rejected if filed by a prisoner.

George v. Smith, 507 F. 3d 605, 607 (7th Cir. 2007).

Here, Plaintiff's Complaint makes it abundantly clear that his claims alleging denial of medical care and the claims based on transfer to an SHU have no transactional relation and, in addition, involve two completely different sets of Defendants. Therefore, the claims related to Plaintiff's alleged SHU transfer were improperly included in the Complaint and should be dismissed. The Court, however, being mindful of Plaintiff's pro se litigant status, will excuse this oversight and screen the SHU claims, rather than determining the SHU claims under Rule 20 and requiring Mr. Acevedo to file a second complaint under a new docket and filing fee.

Plaintiff is asserting nothing but Plaintiff's dissatisfaction with being housed in the wing of the Atlantic County Justice Facility populated by the detainees of races or ethnicities other than those preferred by Plaintiff.  Plaintiff, however, has no due process right in choosing even the place of his confinement.  See, e.g., Olim v Wakinekona, 461 U.S. 238, 245-46 (1983) (inmates have no due process right to choose their specific place of confinement); Meachum v. Fano, 427 U.S. 215, 224-25 (1976) (same).  A fortiori, Plaintiff has no due process right in being housed at the unit populated by the inmates of race or ethnicity of his choice.  Plaintiff's claim would turn civil rights law upon its head by requiring the state to discriminate on the basis of race when it provides jail amenities.  To state such a concept is to reject it.

Since Plaintiff's claims based on his displeasure with the racial composition of his co-inmates is facially without merit, this line of claims will be dismissed with prejudice.

**V.   CONCLUSION**

For the foregoing reasons, the Court will grant Plaintiff's application to file the Complaint without prepayment of the filing fee and will dismiss the Complaint, with prejudice.

An appropriate Order accompanies this Opinion.


**November 12, 2010**              **s/ Jerome B. Simandle**
Date                                JEROME B. SIMANDLE,
                                    United States District Judge